IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MOHAMMED ABDUL RAHMAN AL-SHIMRANI, *et al.*, <br> *Petitioners*, <br><br> v. <br><br> GEORGE W. BUSH, *et al.*, <br> *Respondents*. | Civil Action No. 05-2249 (RMC) <br><br> Previously Filed with CSO on October 24, 2006 and Approved for Public Filing by CSO |

**PETITIONER'S REPLY MEMORANDUM TO RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION TO MODIFY JUDGE ROBERTSON'S MEMORANDUM ORDER ALLOWING A FILTER TEAM**

**Introduction**

Mr. Al-Shimrani hereby submits the following points and authorities in further support of his September 26, 2006 motion to modify the September 15, 2006 Memorandum Order of Judge James Robertson allowing a filter team ("Memorandum Order").

At its core, Respondents' opposition relies on the contention that Mr. Al-Shimrani is attempting to "take another bite at the apple" by re-litigating the issues decided by this Court in its September 15, 2006 Memorandum Order. *See* Respondents' Opposition at 2. This is incorrect. Mr. Al-Shimrani does not seek to alter the substance of the Court's Memorandum Order. Rather, Mr. Al-Shimrani seeks to make limited additions that will bring the Court's order in conformity with the views expressed in the Court's opinion. Petitioner does not seek to

reopen old issues or once again "battle for the court's decision." *In re Ski Train Fire*, 224 F.R.D. 543, 5436 (S.D.N.Y 2004). Mr. Al-Shimrani seeks three narrowly tailored additions that will ensure transparency through notice, accountability through record-keeping, and minimize harm to Petitioners who are wholly uninvolved in the events that triggered Respondents' broad and intrusive investigatory actions. Moreover, the additions achieve these ends without micro-managing or placing an undue burden on the work of Respondents.

**In Their Opposition, Respondents Incorrectly Argue that Petitioner's Motion for Modification Should be Governed by a Stricter Standard of Review than the Rule 59(e) Standard that the Court Should Apply**

Respondents cite to case law that puts forward an incorrect standard of District Court review for Mr. Shimrani's motion to modify the Court's order allowing a filter team. Respondents in their Memorandum of Opposition refer to Petitioner's motion as one of reconsideration while mistakenly referencing case law regarding motions for reconsideration under Rules 60(b) and 54(b).[1] The Court of Appeals for the D.C. Circuit has held that motions to reconsider are routinely construed as motions to clarify, alter or amend a judgment under Rule 59(e). *Piper v. United States Dep't of Justice*, 312 F. Supp. 2d 17, 20 (D.D.C. 2004) (citing *Emory v Sec'y of the Navy*, 819 F.2d 291, 293 (D.C. Cir. 1987)). In this jurisdiction, "a motion for reconsideration is treated as a '[Fed. R. Civ. P.] 59(e) motion if filed within 10 days of entry of the challenged order and as a Rule 60(b) motion if filed thereafter.'" *Lightfoot v. District of Columbia*, 355 F. Supp 2d 414, 420 (D.D.C. 2005) (quoting *United States v. Pollard*, 290 F. Supp. 2d 153, 156 (D.D.C. 2003)). "This 'treatment is appropriate even though the movant does

---

[1] Respondents cite and quote from rulings on motions made under Rules 60(b) and 54(b), from courts in several jurisdictions, including the Second Circuit Court of Appeals, the Southern District of New York, and a Bankruptcy Court in the Eastern District of Wisconsin. These cases apply a standard not appropriate to the motion currently at issue.

2

not specify under which rule relief is sought, because any motion that draws into question the correctness of the judgment is functionally a motion under Civil Rule 59(e), whatever its label.'" *Piper*, 312 F. Supp 2d at 20. (quoting *Emory* 819 F.2d at 293). There is no dispute that Mr. Al-Shimrani's motion to modify this Court's memorandum order was filed within the 10-day deadline of Rule 59(e). Thus, the Court should apply the broader standard attached to Rule 59(e) motions for reconsideration and not the more restrictive standards that govern motions for reconsideration under Rules 54(b) and 60(b).

A court may grant a Rule 59(e) motion to amend if it finds that there is "(1) an intervening change of controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice." *Neal v. Director D.C. Dept. of Corrections*, 400 F. Supp. 2d 134 (D.D.C. 2005) (citing *Rann v. Chao*, 209 F. Supp. 2d. 75, 78, (D.D.C.2002)). In addition, courts also emphasize that when evaluating Rule 59(e) motions, "[t]he district court has considerable discretion." *Piper*, 312 F. Supp.2d at 20 (D.D.C. 2004) (citing *Rann v. Chao*, 209 F. Supp. 2d at 78) (See also *Lightfoot* 355 F. Supp. 2d at 420 (holding that the standards governing a motion for reconsideration under Federal Rule of Civil Procedure 59(e) are less restrictive than those governing motions made under Federal Rule of Civil Procedure 60(b)). The Court should apply the discretionary principles used to decide Rule 59(e) motions to Petitioner's motion for modification; citations to cases resolving motions for reconsideration not made under Rule 59(e) are inapposite.

Respondents' Opposition repeatedly relies on *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99 (D.D.C. 2005), which evaluates a motion for reconsideration under Rule 54(b) rather than the Rule 59(e) standard that governs Petitioner's instant motion. Respondents rely on *Singh* for the proposition that reconsideration of an interlocutory order is only appropriate where

3

the court has misunderstood a party, made a decision beyond the adversarial issues presented by the parties, erred in its understanding of the law, or decided the order prior to a significant change in applicable law or facts. Respondents' Opposition at 2. In *Singh*, however, the movant's motion was premised on the argument that the court's order both misapplied a doctrine of law and failed to apply relevant case law—neither of which is asserted by Mr. Al-Shimrani. *Singh*, 383 F. Supp. 2d at 102-03. Rather, Mr. Al-Shimrani seeks to ensure that the Court's order requires Respondents to be fully accountable for their seizure and handling of privileged materials. Thus, Mr. Al-Shimrani asks the court to grant relief under Rule 59(e) "on those claims which the court has found to have merit, but which the court's judgment order has ignored." *Leigh v. Engle*, 723 F. Supp. 1272, 1273 (N.D. Illinois 1989) (citing *Continental Cas. Co. v. Howard*, 775 F. 2d 876, 883-84 (7th Cir. 1985), *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 186 (1986). In such circumstances, "the decision whether to alter or amend the judgment under Rule 59(e) is left to the sound discretion of the court." *Leigh,* 723 F. Supp. at 1273 (citing *Continental Cas. Co.,* 775 F. 2d at 883-84).[2]

**1. Petitioner's Request for Notification When Privileged Material Is Disclosed Without Court or Counsel Consent Was Raised in Petitioner's Opposition to the Filter Team, Is Not Controlled by the Protective Order, Does Not Place an Undue Burden on Respondents, and Is Critical to Protecting the Attorney-Client Privilege.**

Respondents wrongfully argue that the Court should not grant Petitioner's request for notification of disclosure because Mr. Al-Shimrani did not previously raise this issue in his opposition to Respondents' motion seeking a Filter Team. Mr. Al-Shimrani did raise the issue

---

[2] Respondents also assert that the Court should deny petitioner's motion as the Court has already denied the motion for modification of the filter team order filed by another petitioner. *See* Respondents Opposition at 3 (citing Sept. 22, 2006 Minute Order in *Paracha v. Bush*, No. 04-CV-2022). However, the modifications requested by Mr. Al-Shimrani are wholly different than those requested by petitioner Paracha, and the Court's disposition of this petitioner's motion should not impact its disposition of the instant motion.

4

of notification in his July 20, 2006 response to Respondent's motion. In his response, Mr. Al-Shimrani argued that, in fact, seizure of his legal papers, without notice to his attorneys or to the Court, was especially problematic. *See* Petitioner's Response in Opposition to Respondents' Motion for Procedures Related to Review of Certain Detainee Material at 13.

Respondents use of the Protective Order as authority that should govern Filter Team procedures is misplaced. Respondents incorrectly analogize that since disclosure of certain privileged information without notice is contemplated by the Protective Order, this Court should be unconcerned about the same by the Filter Team. *See* Respondents' Opposition at 4. The disclosure contemplated by the Protective Order, however, is easily distinguishable from the disclosure at issue here. Under the Protective Order, disclosure is permitted, under certain circumstances, when materials submitted by counsel are being reviewed for classification. Respondents' Opposition at 4 (citing *In re Guantanamo Detainee Cases*, 344 F. Supp. 2d 174 (D.D.C. Nov. 8, 2004)). In contrast, here, Counsel have not submitted the attorney-client materials that are subject to disclosure without notice to the Court or Counsel —they have been seized. A second difference is that disclosure under the Protective Order involves the submission to a privilege team of a comparably limited number of documents. The Filter Team, on the other hand, is poised to review approximately 1,100 pounds of documents.[3] Such an endeavor presents great potential for mistakes. The provision of materials to the privilege team under the Protective Order does not present the same types of problems. These critical differences mean that while disclosure under the protective order is necessarily limited and contained, here there is no such limit. In fact, Respondents' massive intrusion into 1,100 pounds of client materials, much of which is likely to be privileged, calls out for notice in the rare, if at

---

[3] The Court itself has noted that review of materials undertaken by Respondents is "a situation unlike that of any case that has been cited to me." Memorandum Order at 25.

all, instances when disclosure without Court or Counsel consent is authorized.

This Court has granted Respondents' proposed order allowing disclosure of attorney-client privileged information that Respondents' Filter Team concludes might reveal either a threat to national security or to the Commander, JTF Guantanamo. Petitioner appreciates the Court's efforts to keep its order minimal and avoid micromanaging a situation "unlike that of any case that has been cited to [this Court]." *See* Memorandum Order at 25. Mr. Al-Shimrani merely seeks the assurance that when the Filter Team determines disclosure is necessary, resulting in potential abrogation of the attorney-client privilege, that this Court and counsel be notified within a reasonable time. Mr. Al-Shimrani does not seek this modification of the Court's order based on hypothetical inconsistencies or omissions in the government's reporting—he seeks it in response to the real ones that have already occurred in his case and have been documented by this Court.[4] In addition, justice requires that Respondents notify Petitioner's Counsel and the Court. Given the scope and magnitude of Respondents' investigation, without such notice to Counsel and the Court there is no way to monitor Respondents' compliance with the Court's order.[5]

### 2. Requiring Disclosure to Counsel of Records the Filter Team Should Be Keeping Does Not Impose an Additional Burden.

Respondents argue, without support, that for the Government to provide counsel with its

---

[4] See, for example, the government's first representation that it had searched the materials of only eleven detainees, which was contradicted by its later assertion that in fact the materials seized from 155 detainees had been searched. Memorandum Order at 9. This Court has also noted that "[n]ot only did the government provide inconsistent accounts of what types of materials were impounded and the scope of its initial examination of those impounded materials, but it was more than a month before the government advised the court of its dramatic underestimate of the initial document review." Memorandum Order at 11.

[5] Respondents' footnote suggesting that such notification would compromise national security both misunderstands the proposed amendment and is based on faulty logic. *See* Respondents' Opposition at 4. Counsel has security clearance to handle and view classified material. To the extent that notice will involve classified materials, Respondents may submit the information to the court and counsel under seal.

6

record of materials reviewed, copied, disclosed, or distributed by the filter team would be overly burdensome.  Respondents note the Court's concern regarding the need for detailed record-keeping, but contend that an Order requiring production of its records to counsel would be a "significant undertaking," "well beyond" any obligation to keep such records.  Respondents fail to explain how the extra step of providing a record to counsel, a record that should have already been produced, would be a significant undertaking.[6]  Respondents once again point to their concerns about "logistics and burdens" of individualized dealings.  Respondents' Opposition at 5**.**  The Court already heard and considered these burdens when, under the heading "Obligations of the Filter Team" in the Court's Memorandum Order, the Court cautioned Respondents to keep "meticulous records . . . regarding each document seized and reviewed, including records reflecting copies made of such documents, their distribution and use, and chains of custody."  Memorandum Order at 27.   Mr. Al-Shimrani merely requests in his motion for modification of the order, that the Court's expectations of record keeping be given force.  Respondents took on an immense task by seizing and reviewing the legal and non-legal materials of all detainees at Guantanamo Bay, and Respondents purport to be "mindful of and attentive to" the Court's concerns that Respondents maintain meticulous records.  It is unconvincing that the extra step of providing such records to Counsel and the Court adds significantly to Respondents' responsibilities.

   Respondents also oppose Mr. Al-Shimrani's second proposed modification on the grounds that Petitioner provided "no convincing reason for now revisiting the matter and modifying the framework adopted by the Court."  First, the Court's framework already contemplates the

---

[6] Respondents maintain that detainees' materials have been sorted into bags labeled with the detainees' identifying information.  *See* Memorandum Order at 9.  If Respondents follow the Court's cautioning in its September 15, 2006 Order and review detainee materials while recording which materials have been seized, reviewed, copied and disclosed for each particular detainee, then Respondents will easily be able to identify the records for a particular detainee and convey that information to his particular counsel.

7

keeping of records and potential requirements of accountability. *See* Memorandum Order at 27 (discussing the potential for *Kastigar*-like proceedings). Second, Mr. Al-Shimrani's initial filing in opposition to the creation of the filter team[7] argued that Respondents' confiscation of detainees' materials was inappropriate, and then requested a Special Master to identify privileged materials and expedite their rapid return to detainees. However, in light of the Court's order granting Respondents' motion over Petitioner's objections, while also recognizing the Government's poor handling of the matter and strong urging of meticulous record keeping, Petitioner seeks for the Court to impose mechanisms that will hold Respondents accountable for meeting the Court's stated expectation. It is unconvincing for Respondents to argue Petitioners should have foreseen that the Court would urge record-keeping without affirmatively ordering it.

Moreover, Respondents' Opposition to Petitioner's Motion for Modification indicates the need for the Court to modify its Order to require that Respondents exercise the caution of maintaining adequate records of materials seized and reviewed by the filter team. Respondents' Opposition states "they are mindful and attentive to the concern" of the Court that such records are kept. This non-committal language does not instill confidence. Respondents do not report that a modification of the Order is unnecessary because, for example, steps are underway to institute record-keeping procedures in preparation for Filter Team review. A modified order requiring disclosure of records to the Court and Counsel will assure proper record-keeping and accountability.

### 3. The Seizure of Petitioner's Legal Papers Interferes with Petitioner's Access to Counsel, and Respondents Give No Sufficient Indication that, Without Modification to the Court's Order, They Will Return the Materials Expeditiously

---

[7] Dubbed "Petitioner's Response in Opposition to Respondents' Motion for Procedure Related to Review of Certain Detainee Material."

8

Respondents oppose, without good reason, any requirement that attorney-client communication unrelated to the investigation be returned to petitioners "without delay." Respondents support their opposition by asserting that "it is contemplated that attorney-client materials unrelated to the investigation will, in fact, be returned to detainees," and that Respondents seek an expedited resolution of the matters. Respondents' Opposition at 5. However, the contemplation of an eventual return of detainees' materials, and an unsupported contention that Respondents want these matters resolved does not assure that detainees' materials will be returned as soon as they are no longer relevant to the investigation.[8] Respondents argue that because detainees can still receive counsel visits and legal mail, detainees have not been deprived of access to counsel by the impoundment of their legal materials. This argument fails to take into account the difficulties and burdens, even under the Protective Order, of Counsel access to detainees through visits and mail, and hence the difficulty in compensating for the seized materials.

Again, Respondents' fail to commit to a procedure that seeks fundamental fairness. Petitioner does not seek to have counsel or the Court micro-manage its investigation. Rather, Mr. Al-Shimrani seeks to minimize the harm he suffers from the Government's reaction to events in which he had no involvement. Since it should be no significant burden for the Government to return detainees' materials as soon as the Filter Team determines their irrelevance, and since the Protective Order's provisions for legal mail and counsel visits are extremely burdensome to counsel, the Court should modify its Order to require confiscated attorney-client communications unrelated to the NCIS investigation be returned to detainees without delay.

---

[8] At the time of Respondents' filing of their opposition, the Court's order had been in force for approximately four weeks. Yet, Respondents' opposition does not report that any detainee's materials have been returned to him upon completion of review by the Filter Team.

9

For the forgoing reasons, and because it is well within this Court's discretion to grant Mr. Al-Shimrani's motion to amend the memorandum order, the motion for modifications to the September 15, 2006, Order should be granted and the Order should be reissued with the amendments.

Dated: New York, New York
　　　 October 24, 2006.

　　　　　　　　　　　　　　　　　　　　　　　　Respectfully submitted,
　　　　　　　　　　　　　　　　　　　　　　　　Counsel for Petitioner
　　　　　　　　　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　　　　　　　Martha Rayner (Pursuant to LCvR 83.20(g))
　　　　　　　　　　　　　　　　　　　　　　　　(NY-MR-1423)
　　　　　　　　　　　　　　　　　　　　　　　　Ramzi Kassem (NY-RK-3567)
　　　　　　　　　　　　　　　　　　　　　　　　James A. Cohen (NY-JC-3836)
　　　　　　　　　　　　　　　　　　　　　　　　Lincoln Square Legal Services

　　　　　　　　　　　　　　　　　　　　　　　　Fordham University School of Law
　　　　　　　　　　　　　　　　　　　　　　　　33 West 60th Street, 3d Floor
　　　　　　　　　　　　　　　　　　　　　　　　New York, New York 10023
　　　　　　　　　　　　　　　　　　　　　　　　Telephone: (212) 636-6934
　　　　　　　　　　　　　　　　　　　　　　　　Fax: (212) 636-6923