**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Mohammed Abdul Rahman Al-Shimrani,**<br><br>**Petitioner,**<br>**v.**<br><br>**GEORGE W. BUSH, et al.,**<br><br>**Respondents.** | **CV 05-2249-RMC**<br><br>**OPPOSITION TO MOTION TO DISMISS** |

**OPPOSITION TO RESPONDENTS' MOTION TO DISMISS, MOTION FOR A STAY-AND-ABEY ORDER, AND NOTICE OF INTENT TO FILE A PETITION UNDER THE DETAINEE TREATMENT ACT**

Petitioner, through counsel, opposes Respondents' Motion to Dismiss and further respectfully requests that this Court, in the interests of justice, stay the dismissal of this habeas action pending Petitioner's exhaustion of his remedies in the Court of Appeals under the Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat 2680 (2005) ("DTA"), and hold this action in abeyance pending Petitioner's exhaustion of those remedies and the resolution in the Supreme Court of a renewed petition for certiorari to review the Court of Appeals' jurisdictional holding in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007). Petitioner further hereby notifies this Court of his intent to file a petition under the DTA in the District of Columbia Circuit Court of Appeals.

# TABLE OF CONTENTS

**Page**

Introduction....................................................................................................3-4

A. *Boumedien* is not binding on this Court............................................................4-6

B This Court Retains Subject-Matter Jurisdiction Over The Habeas Corpus Petition As Long As The Petitioner's Claims Are Not Frivolous And Have Not Been Decided On The Merits By The Supreme Court.......................................................................6-9

C. The Boumediene Case Establishes That The Present Case Involves Substantial Issues That Have Not Been Decided By The Supreme Court And That The Exhaustion Of Available Remedies Should Precede A Decision On The Merits........................9-13

1. Justices Stevens and Kennedy Explicitly And The Circuit Court Implicitly Adopted The Exhaustion Of Remedies Model For Habeas Relief.

2. The Supreme Court Has Not Decided Any Questions Regarding The Jurisdiction Of This Court Or The Rights That Can Be Enforced Through Habeas Corpus Proceedings.

3. The Jurisdictional Questions Regarding Habeas Corpus Cannot Be Resolved Until The Adequacy Of The DTA Remedy Becomes Known.

D. It Would Be an Abuse of Discretion For This Court *Not* to Issue an Order to Stay-and-Abey, Pursuant to *Rhines*.........................................................................13-15

E. Under United Mine Workers, The Court Has Authority To Preserve The Status Quo While Jurisdictional Questions Are Litigated..................................................16-17

F. The Protective And Other Procedural Orders Are Necessary To Assure That "The Office And Purpose Of The Writ Of Habeas Corpus Are Not Compromised.".....17-20

G. Boumediene Does Not Establish The Record To Which Mohammed Al-Shimrani Should Be Bound Because He Is Exhausting Available Remedies And Other Legal Theories May Be Available On The Particular Facts Of Their Cases................21-22

Conclusion....................................................................................................22-23

## Introduction

The petitioner, through counsel, opposes the Respondents' Motion to Dismiss because controlling Circuit and Supreme Court authority require the Court to continue the stay of the District Court proceedings, holding them in abeyance pending the petitioner's exhaustion of remedies under the Detainee Treatment Act of 2005.

This Court has subject-matter jurisdiction over this habeas corpus petition under the Supreme Court case upon which the Respondents' Motion is primarily based: Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is frivolous or foreclosed by prior decisions of the Supreme Court, not of the Circuit Court. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998). The Circuit Court's split decision in *Boumediene v. Bush*, and the split commentary from Supreme Court Justices on the denial of certiorari in that case, establish that the issues involved are substantial and that the Supreme Court has *not* decided the important questions that were deferred pending exhaustion of available remedies. 476 F.3d 981 (D.C.Cir.), *cert. denied*,127 S.Ct. 1478 (2007).

The Supreme Court has provided a clear road map for the litigation involving petitioners who filed habeas corpus petitions from Guantanamo at a time when this Court had initial jurisdiction under *Rasul v. Bush*, 542 U.S. 466 (2004). While available remedies are exhausted, the District Court has authority to enter a stay-and-abey order to safeguard habeas rights during the period of exhaustion, and such an order is mandatory in the absence of

frivolous claims and intentional delay. *Rhines v. Weber*, 544 U.S. 269, 274 (2005). While the merits are stayed pending exhaustion and during post-exhaustion litigation, this Court has the authority to maintain the supervisory orders this Court has entered regarding access to counsel and classified information as well as factual returns. *United States v. United Mine Workers of America*, 330 U.S. 258, 290-91 (1947); *In re President and Directors of Georgetown College*, 331 F.2d 1000, 1005 (D.C. Cir. 1964).

Permitting Mohammed Al-Shimrani to present his post-exhaustion facts and claims to this Court is logical, fair, and compelled by governing Supreme Court authority. The petitioner has made substantial, viable claims in this habeas matter; he should be able to make a record for potential appellate and Supreme Court review. The motion to dismiss should be denied.

Petitioner further hereby notifies this Court of his intent to file a petition under the DTA in the District of Columbia Court of Appeals.

**A. *Boumediene* is Not Binding on This Court**

Respondents argue that dismissal of this habeas action is consistent with the established law of this Circuit as well as the clear intent of Congress as expressed within the MCA (Motion to Dismiss at 1). This argument fails to recognize that the holding in *Boumediene* is neither final nor binding upon this court. Moreover, the constitutionality of the statute is still being litigated. As a matter of necessary

predicate, the Supreme Court has openly invited habeas counsel to exhaust all available remedies in order to repetition the Court for review. Dismissal at this time would be premature. Until the constitutionality of the MCA has been resolved, it is more appropriate to maintain the stay of these habeas actions.

Moreover, this Court is not obligated to apply by rote the Court of Appeals' conclusions regarding the jurisdictional implications of the MCA. It has long been held that courts have jurisdiction to determine their own jurisdiction. This type of threshold jurisdictional determination, which must be made in each case based on its own facts, is precisely what the Supreme Court did in *Ex parte Milligan, 71* U.S. 2 (1866). In discussing the authority of the courts to address Milligan's claims that a writ of habeas corpus should issue notwithstanding action that suspended the writ, the Supreme Court stated:

> The suspension of the privilege of the writ of habeas corpus does not suspend the writ itself. The writ issues as a matter of course; and on the return made to it the court decides whether the party applying is denied the right of proceeding any further with it.

71 U. S. at 131. The Court then went on to consider whether the facts showed "that Milligan was a prisoner of war, and, therefore, excluded from the privileges of the statute. *Id.* The Court concluded that Milligan was not a prisoner of war and not covered by the suspension statute; therefore, the Court granted the writ. *Id.* Similarly, *in Duncan v. Kahanamoku,* 327 U.S. 304 (1946), the Court took jurisdiction and determined that the petitioner did not fall within the class of people to whom the Hawaiian martial law declaration applied. *See also United States v. Villato,* 2 U.S. (Dail.) 370 (C.C. D. Pa. 1797) (where prisoner had not been naturalized,

granted to free him from treason charge). Nothing precludes this Court from conducting its own investigation into the jurisdictional issues involved in Petitioners' claims.

### B. This Court Retains Subject-Matter Jurisdiction Over The Habeas Corpus Petition As Long As The Petitioner's Claims Are Not Frivolous And Have Not Been Decided On The Merits By The Supreme Court.

The Respondents place primary reliance on *Steel Co.* for the unremarkable proposition that jurisdiction is a threshold question (Respondents' Motion to Dismiss at 4, hereinafter Motion). The Respondents ignore the preceding language in *Steel Co.* that supports this Court's jurisdiction to maintain the habeas action as long as a legitimate controversy exists that has not been resolved on the merits by the Supreme Court. *Steel Co.*, 523 U.S. at 89.

The starting point of *Steel Co.* is that the District Court has subject matter jurisdiction as long as there is a non-frivolous argument that the laws and Constitution support the claim:

> [T]he district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another.' . . . unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'

523 U.S. at 89 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83, 685 (1946)). As demonstrated by the dissenting opinions at both the Circuit Court level and on the denial

of certiorari in *Boumediene*, there is a reading of the Constitution and laws of the United States that would sustain Mr. Al-Shimrani's habeas corpus petition. 476 F.3d at 994-1012 (Rogers, J., dissenting); 127 S.Ct. at 1479-81 (Breyer, Souter & Ginsburg, JJ., dissenting from denial of certiorari).

The *Steel Co.* opinion also establishes that a Circuit Court opinion, such as *Boumediene*, is not sufficient to deprive the Court of subject-matter jurisdiction. Only when the Supreme Court rules adversely on the merits is dismissal for want of subject matter jurisdiction appropriate: "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, *foreclosed by prior decisions of this Court*, or otherwise completely devoid of merit as not to involve a federal controversy." *Id.* (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)(emphasis added)). The *Boumediene* denial of certiorari is emphatically not a ruling on the merits.

The jurisdictional issues are obviously not frivolous because the courts have been split on the constitutional issues at each level of the litigation: the District Courts split, leading to the two-to-one *Boumediene* opinion, resulting in the three-way fracture in the *Boumediene* denial of certiorari. Seldom has this Country faced weightier issues about the meaning of our Constitution. The main case upon which the Respondents rely establishes that the motion to dismiss should be denied while remedies are exhausted.

Ironically, the Respondents' own Motion recognizes this Court's continuing

jurisdiction while the merits are exhausted, litigated, and appealed. In footnote 15, the Respondents point out that the Protective Order should survive dismissal, citing to a case upon which the petitioner relies, *United Mine Workers* (Motion at 8-9). As argued *infra* at 15, *United Mine Workers* establishes that the District Court has the authority throughout the litigation to maintain the status quo by enforcing the protective order and otherwise ensuring that "the office and purposes of the writ of habeas corpus are not compromised," as Justices Stevens and Kennedy put it in *Boumediene*.

This Court retains the power to decide its own jurisdiction in the first instance. *Kircher v. Putnam Funds Trust*, 126 S.Ct. 2145, 2155; *United States v. Ruiz*, 536 U.S. 622, 628 (2002). While the efficacy of the DTA remedies are determined, it is premature for this Court to determine the dispositive questions. Meanwhile, this Court should follow the stay-and-abey norm established in *Rhines*, then, if the case is not mooted by the DTA proceedings, provide the petitioner the opportunity to make his record, to present his claims, and to receive a decision based on the facts and law of his individual case.

The Respondents' position is based on a fundamental misunderstanding of what it means for a court to have jurisdiction. "Jurisdiction is a word of many, too many, meanings." *Steel Co.*, 523 U.S. at 90 (quoting *United States v. Vanness*, 85 F.3d 661, 663 n. 2 (D.C. Cir. 1996)). While the *Boumediene* opinion states the current law of the Circuit, the ruling does nothing to impair Mohammed Al-Shimrani's rights to exhaust his remedies while this Court preserves the status quo. If necessary, after exhaustion, this

Court, the Circuit Court, and the Supreme Court have jurisdiction to determine the substantial issues raised by the petitioner without prejudgment based on a Circuit Court ruling that does not address Mr. Al-Shimrani's specific factual and legal claims.

### C. The *Boumediene* Case Establishes That The Present Case Involves Substantial Issues That Have Not Been Decided By The Supreme Court And That The Exhaustion Of Available Remedies Should Precede A Decision On The Merits.

The Respondents attempt to stretch the Circuit Court's *Boumediene* decision far beyond its reach. Despite the initial jurisdiction found in *Rasul*, a split panel of this Court found that post-*Rasul* statutes deprived the courts of jurisdiction over petitions involving aliens detained at Guantánamo. *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007). Only because the petitioners in those cases had declined to seek review directly with the Circuit Court under the Detainee Treatment Act of 2005, the Court found that the "only recourse" was to vacate the District Court decision and dismiss the case for lack of jurisdiction. *Boumediene*, 476 F.3d at 994. The petitioners filed for a writ of certiorari and, on April 2, 2007, the Supreme Court denied certiorari, with both a three-Justice dissent and a statement respecting the denial of certiorari. *Boumediene v. Bush*, 127 S.Ct. 1478 (2007).

The statement of Justices Stevens and Kennedy found that, given "our practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction

over applications for the writ of habeas corpus," denial of certiorari was appropriate "at this time." *Id.* The Justices specifically expressed concern regarding maintenance of the status quo during the litigation: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" *Id.* (quoting *Padilla v. Hanft*, 547 U.S. 1062 (Kennedy, J., concurring in the denial of certiorari)).

The Respondents' reliance on *Boumediene* is misplaced for several reasons. First, the Circuit Court's reference to the *Boumediene* petitioners' decision not to exhaust, coupled with Justice Stevens and Kennedy's explicit adoption of the exhaustion model based on *Ex parte Hawk*, 321 U.S. 114 (1944), support continuing the stay while the DTA remedy is exhausted. *Id.* Second, the jurisdictional questions have not been finally resolved because "as always, denial of certiorari does not constitute an expression of any opinion on the merits." *Boumediene*, 127 S.Ct. at 1478 (Stevens & Kennedy, JJ., statement regarding denial of certiorari)(citing *Rasul*, 542 U.S. at 480-81). Third, Justice Stevens and Kennedy's citation to Supreme Court authority regarding the efficacy of the alternative remedies contemplates an underlying habeas corpus case in which the petitioner can present such arguments to the District Court and, if necessary, the Circuit Court and Supreme Court.

1. *Justices Stevens and Kennedy Explicitly And The Circuit Court Implicitly Adopted The Exhaustion Of Remedies Model For Habeas Relief.*

*Boumediene* does not control this case because, unlike the petitioners in that case, Mohammed Al-Shimrani is exhausting his remedies under the DTA. The Circuit Court opinion expressly predicated its dismissal order on the petitioners' failure to utilize available remedies under the DTA. *Boumediene*, 476 F.3d at 994. Justices Stevens and Kennedy explained that "[d]espite the obvious importance of the issues," the Court was denying certiorari "at this time" in light of the Court's practice of requiring exhaustion of available remedies, citing *Ex parte Hawk*. *Boumediene,* 127 S.Ct. at 1478.

The citation to *Hawk* is telling. In that case, the petition for federal habeas corpus relief was filed under circumstances, as in the present case, in which the effectiveness of other remedies had not been established. The Supreme Court not only applied the exhaustion rule but held that the adequacy of the available remedy should be decided in the first instance by "the federal district court":

> Where the state courts have considered and adjudicated the merits of his contentions, and this Court has either reviewed or declined to review the state court's decision, a federal court will not ordinarily reexamine upon writ of habeas corpus the questions thus adjudicated . . . . But where resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raised, either because the state affords no remedy . . . or because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate . . . , a federal court should entertain his petition for habeas corpus, else he would be remediless. In such a case he should proceed in the federal district court before resorting to this Court by petition for habeas corpus.

321 U.S. at 118 (citations omitted). The exhaustion model anticipates that the ultimate questions regarding jurisdiction, which may depend in large part on the efficacy of the DTA remedy, will first be considered and decided in the District Court. The ultimate

issues would then be preserved for appellate and Supreme Court review, if necessary.

2. *The Supreme Court Has Not Decided Any Questions Regarding The Jurisdiction Of This Court Or The Rights That Can Be Enforced Through Habeas Corpus Proceedings.*

The Respondents' claims regarding *Boumediene* ignore the simple reality that "as always, denial of certiorari does not constitute an expression of any opinion on the merits." 127 S.Ct. at 1478. Three dissenting Justices and Judge Rogers, in his dissent in *Boumediene*, explained that the constitutional ramifications of a statute that purports to disenfranchise petitioners in existing habeas corpus petitions are profound and of obvious importance. The addition of Justices Stevens and Kennedy's statement confirms that Mr. Al-Shimrani's petition should be fully considered, after exhaustion, upon his unique facts and legal arguments. The *Boumediene* case does not finally resolve the jurisdictional questions in Mohammed Al-Shimrani's case.[1]

3. *The Jurisdictional Questions Regarding Habeas Corpus Cannot Be Resolved Until The Adequacy Of The DTA Remedy Becomes Known.*

Questions regarding the suspension and elimination of the writ of habeas corpus require consideration of whether alternative remedies provide protection coextensive with the Great Writ. *Swain v. Pressley*, 430 U.S. 372, 381 (1977) ("the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus."). The

---

[1] The *Boumediene* case does not even finally decide the questions for the *Boumediene* petitioners, given that the mandate has not issued and the cases are still subject to motions and briefing.

*Boumediene* statement on certiorari clearly stated, with citation to *Marino v. Ragen*, 332 U.S. 561 (1947), that, if the DTA remedy is "inadequate", the Court is prepared to address the merits of the habeas corpus claims. Further, the Court stated that, in the interim, the Respondents should take no additional steps "to prejudice the position of petitioners" in seeking review. *Id.* By maintaining the present case in the District Court, the Court is in a position to "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised." *Id.*

### D. It Would Be an Abuse of Discretion For This Court *Not* to Issue an Order to Stay-and-Abey, Pursuant to *Rhines.*

Respondents attempt to minimize the significance of *Rhines* by stating that the Guantánamo habeas cases, unlike *Rhines*, do not involve "any temporal bar to a habeas petition," and the "authority of a court to enter a stay is constrained by statute." (Motion to Dismiss at 7). Respondents, however, fail to note that the constitutionality of the operative statute in *Rhines* (the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")) was not being actively litigated as part of the habeas petition, as it is here. In fact, in the absence of intentional dilatory tactics by the petitioner, the *Rhines* Court went on to hold that "it would likely be an abuse of discretion to deny a stay and to dismiss" a petition if the petitioner has good cause for the failure to exhaust and the unexhausted claims are potentially meritorious. *Rhines*, 544 at 278; *accord Pace v.*

*DiGuglielmo*, 544 U.S. 408, 416-17 (2005). Petitioners in the present case satisfy all three preconditions – good cause, no deliberate delay, and potentially meritorious claims – under which failure to stay-and-abey would constitute an abuse of discretion.

First, there is good cause for the failure to exhaust. Where the petitioner in *Rhines* at least had the ability to pursue both modes of relief at the outset of his case, the potential remedy in Petitioner's case did not exist until a month after his habeas corpus petition was filed and did not purport to provide the habeas relief to which Petitioner was entitled at the time the habeas action was filed. The questions left open in the Supreme Court's decision in *Rasul v. Bush*, 542 U.S. 466 (2004), which established a right to proceed under § 2241 at the time Petitioner submitted his document, and the subsequent DTA and MCA, have resulted in major complexities that left the legal landscape opaque. The Court of Appeals required several rounds of briefing over two years before it could issue its decision in February, 2007. Respondents argue that Petitioner could have pursued a petition any time since the enactment of the DTA (Motion at 7); however, it should be noted that as of the *Hamdan* decision in June of 2004, Petitioner had no reason to believe that their habeas petitions would be dismissed and that an alternative remedy would be necessary. Petitioner thus had excellent reasons for not initiating the DTA procedures until the denial of certiorari in *Boumediene*.

Second, Petitioner has done nothing to deliberately delay this case. Counsel filed Petitioners' petition for habeas corpus relief in November of 2005, just one month after

becoming co-counsel with the Center of Constitutional Rights, which had obtained the necessary next friend authorization. Approximately two months later, on January 27, 2006, this case was stayed, and has remained so ever since.

Third, the claims raised in this Court are substantial and meritorious. Mohammed Al-Shimrani is deep into his sixth year of imprisonment under the harsh conditions at Guantanamo. The military has brought no charges against him and he has had no meaningful review of the legality of his detention nor the allegations used by Respondents to justify his long-term, indefinite imprisonment. Though Respondents have claimed to want to close Guantanamo, there is no end in sight for Mr. Al-Shimrani. In the event the case is remanded, or if the DTA procedures prove an inadequate substitute for constitutionally-required habeas corpus procedures, this Court should be in position to proceed immediately on the habeas petition.

Respondents argue that Petitioners have no statutory right to have their cases abeyed as they exhaust alternative remedies. (Motion at 6) Again, Respondents misinterpret the holding in *Rhines*. By testing whether the DTA petition to the Court of Appeals provides an adequate substitute for their habeas proceedings in this court, Petitioner will challenge the constitutionality of the very statute Respondents are citing as the basis for dismissing said proceedings. Not only is abeyance within this court's discretion, but given the good cause for delay, absence of dilatory tactics, and potentially meritorious claims, it would be an abuse of that discretion not to issue a stay-and-abey order.

### E. Under *United Mine Workers*, The Court Has Authority To Preserve The Status Quo While Jurisdictional Questions Are Litigated.

In the statement accompanying the *Boumediene* order, two Justices stated: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" 127 S.Ct. at 1478 (2007). The Justices' language echoes the long-established principle that, even if there is no jurisdiction, that ultimate question is for the Supreme Court, and that while the matter is under consideration, the courts have "authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition." *United Mine Workers*, 330 U.S. at 291 (quoting *United States v. Shipp*, 203 U.S. 563, 573 (1906) (Holmes, J.)). The Circuit Court of Columbia Circuit has not hesitated to apply these principles:

> Of course, whether or not there was jurisdiction to decide the merits, until the question of jurisdiction is determined, there was "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition . . . ." Clearly there was "power to preserve existing conditions while . . . determining (the) authority to grant injunctive relief."

*In re President and Directors of Georgetown College*, 331 F.2d 1000, 1005 (D.C. Cir. 1964) (internal citations omitted) (quoting *Shipp* and *United Mine Workers*). This Court should carefully protect the status quo by maintaining the orders entered to date to assure the petitioner is not prejudiced in his ability to litigate the DTA action and to preserve

potential remedies in this Court and on appeal.

The denial of certiorari in *Boumediene* leaves unanswered predicate questions necessary to deciding issues in Mr. Al-Shimrani's case including: Does the DTA provide a forum for resolving issues regarding unlawful detention coextensive with traditional habeas corpus? If not, has the writ been unconstitutionally suspended or eliminated? Is the government taking "additional steps to prejudice the position of petitioners in seeking review of this Court" and, if so, should this Court "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised?"

The Respondent's motion to dismiss should be denied because this Court has insufficient information to answer a number of questions the DTA proceedings will answer. Further, if this Court eventually reaches the jurisdictional and constitutional questions, and rules adversely to the petitioner, there must be an adequate record for the Circuit Court's appellate review and, if necessary, for the Supreme Court to decide whether to grant a writ of certiorari, all of which requires that the petition in this Court remain in place until after the petitioner has exhausted the DTA procedures. During that process, the Respondents should be foreclosed from prejudicing the petitioner's ability to litigate these questions – at both the District Court and Circuit Court level.

**F. Maintaining the Status Quo Is Necessary, As Dismissal Would Irreparably Harm Petitioners in Contravention of the Express Instruction of the Supreme Court That "The Office And Purpose Of The Writ Of Habeas Corpus Are Not Compromised."**

In denying certiorari in *Boumediene*, Justices Kennedy and Stevens expressly

charged courts, including this one, with a watchdog role. In the event that the government were to "take additional steps to prejudice the position of petitioners in seeking review in this court," courts were tasked with "[acting] promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised." In their Motion to Dismiss, Respondents seek to have this court dismiss the Amended Protective Order and all other access-related orders currently in place in this habeas proceeding and establish a brand-new set of procedures at the Court of Appeals level. Such actions could cause irreparable damage to Petitioners' ability to exhaust their alternative remedies. Were the new protective order proposed by Respondents in *Bismullah* implemented, it would have a chilling effect upon the attorney-client relationship, in that communications from counsel would no longer be privileged, but subject to screening and redaction by the Department of Defense. [1] In addition, counsel would be limited to three visits with Mr. Al-Shimrani, after which they would presumably be cut off from ever seeing their client again. Negotiating a new protective order that ensured protection of attorney-client privilege and access to Petitioner could drag on for months; meanwhile, in the absence of a protective order, Respondents could deny counsel all access to their client. While jurisdictional issues are being settled, it is within the discretion of this court to maintain the status quo with respect to the

---

[1] *Bismullah v. Bush, DTA Petition 06-1197,* Respondents' Motion for Entry of Protective Order, Addendum B, Proposed Protective Order at 36 ("Documents marked 'legal mail' by counsel shall be subject to content review and security and contraband screening by the DoD Privilege Team.") and at 37 ("Counsel will be notified with respect to legal mail that, upon review, will be redacted or screened out.")

protective order and counsel access procedures to ensure that communications between counsel and their client are not summarily terminated by a statute whose constitutionality is in the process of being litigated.

This Court has the discretion to enter a stay as it sees fit, and maintaining the status quo is necessary here in order to prevent irreparable harm. This court should carefully protect the status quo by maintaining the orders entered to date to assure that Petitioners are not prejudiced in their ability to litigate the DTA action as well as to preserve potential remedies before this court. Maintenance of the Protective Order, and the client access provided therein, is absolutely critical for effectively exhausting Petitioners' remedies under the DTA. Without the Protective Order in place, there is no legal mail channel; there is no privileged communication between attorney and client; base visits would be curtailed or eliminated; and counsel may be forced to destroy the classified documents currently in their position that have shed the only insight to date upon the factual bases for Petitioners' detention. Absent the protections of the Protective Order, counsel will be unable to provide the Court of Appeals with sufficient factual information to make a balanced and informed decision regarding the merits of their DTA Petition.

Also, Respondents have signaled their intent to dramatically restrict prisoners' access to counsel, proposing a protective order at the Court of Appeals level that would, among other things, require all legal mail from counsel to Petitioners to be first screened and redacted by Department of Defense employees. Secondly, counsel would be restricted to

three visits with their clients. It is unclear whether counsel who have already visited their clients three times would be permanently barred from ever visiting their clients again. Third, [Department of Defense] officials would have unilateral authority to decide whether to permit counsel to see the evidence used to justify a detainee's enemy combatant designation. Counsel for Guantánamo prisoners have labored under extraordinary circumstances to cultivate relationships with their clients. Counsel have had to overcome the government's attempts to bar them completely, well-documented instances of anti-Semitic statements designed to drive wedges between the detainees and their counsel, and onerous hurdles for traveling to the base. The proposed protective order is a naked attempt by the government to impede prisoners from challenging the factual bases for their detention and return to a pre-*Rasul* state of the world.

Maintenance of the status quo is critical to foreclosing Respondents from prejudicing Petitioners' ability to litigate – at the District Court or Circuit Court level – these issues. In the event the case is remanded, or if the DTA procedures prove an inadequate substitute for constitutionally-required habeas corpus procedures, this Court should be in position to proceed immediately on the issues raised. Petitioners have waited nearly three years to enjoy the promise of *Rasul*, and should be spared any further delays that would ensue were it necessary to negotiate a brand new set of protective orders and access procedures.

### G. *Boumediene* Does Not Establish The Record To Which Mohammed Al-Shimrani Should Be Bound Because He Is Exhausting Available Remedies And Other Legal Theories May Be Available On The Particular Facts Of His Case.

The Respondents' request for dismissal fails to recognize Mr. Al-Shimrani's unique arguments, underlying facts, and resulting legal issues. The *Boumediene* cases involve specific allegations and legal theories; those cases do not control all the potential issues to be raised by the petitioners. *Texas v. Cobb*, 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *see also United States v. Booker*, 543 U.S. 220, 239-242 (2005) (limiting *stare decisis* effect of cases where constitutional issue was not raised or resolved). The most basic distinction between this case and *Boumediene* is that the scope and efficacy of the DTA remedy is being tested and will provide this Court necessary information that will only be known once the exhaustion of remedies is completed. Until then, the factual predicate for evaluating the legal issues is lacking, rendering the cases unripe for the fully developed review anticipated by Justices Kennedy and Stevens.

The DTA litigation, in addition to providing insight whether the DTA is an adequate alternative to habeas corpus, will also provide the opportunity to determine this Court's role in the DTA exhaustion process. Besides providing the procedural context for the litigation, there may be the need to remand certain issues to this Court based on the inadequacy of the DTA procedure for factual development and equitable relief commensurate with habeas

corpus. For the Circuit Court to exercise these options, the present habeas cases must be stayed and held in abeyance.

The *Boumediene* cases did not resolve all potential legal issues regarding the purported statutory disenfranchisement of the jurisdiction that existed at the filing of the habeas petition under *Rasul*. The post-exhaustion litigation, if not mooted by relief granted under the DTA, will involve legal approaches that the *Boumediene* majority did not address and resolve. If *Rasul* means anything, the constitutional validity of the DTA statute must be determined in light of the post-DTA litigation and address Mohammed Al-Shimrani's unique claims.

**Conclusion**

The petitioner's habeas corpus rights are far from finally decided: the Supreme Court has yet to speak on the merits, and the petitioner has not had his individual facts and legal arguments heard. The Respondents' motion prejudges the petitioner's case and, if effect, would destroy the carefully crafted measures in the protective order that balance competing interests without prejudicing Mr. Al-Shimrani's ability to communicate with counsel, which is especially important given the harsh conditions of confinement at Guantanamo and the intense isolation wrought by solitary confinement and strict information control. Under governing Supreme Court precedent, the status quo should be preserved while the cases are litigated: under *United Mine Workers*, the courts have "authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition;" under *Rhines*, the mechanism for permitting exhaustion of remedies without prejudice to habeas

corpus rights is to stay the District Court action and hold it in abeyance for a reasonable time for the DTA direct actions to be litigated.

For the foregoing reasons, the petitioner respectfully requests that the Court deny the Respondents' motion to dismiss. In the event the Court grants the motion, the petitioner requests that the Court stay the effect of the dismissal for an adequate time to permit appellate review.

Dated this 2nd day of May, 2007.

Respectfully Submitted,
Counsel for Petitioner

/s/ Martha Rayner
Martha Rayner (NY-MR-1423)

Ramzi Kassem (NY-RK-3567)
(Pursuant to LcvR 83.20(g))

Fordham University School of Law
International Justice Clinic
33 West 60th Street, 3d Floor
New York, New York 10023
212-636-6941
Fax: 212-636-6923

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Mohammed Abdul Rahman Al-Shimrani,**

**Petitioner,**

**v.** **CV 05-2249 RMC**

**George W. Bush, et. al.,**

**Respondents.**

---

**[PROPOSED] ORDER**

The Court having considered Petitioner's Motion for Stay-and-Abey Order,

IT IS HEREBY ORDERED that the Motion is granted; it is further

ORDERED that this action shall be stayed and held in abeyance pending Petitioners' exhaustion of those remedies, and the filing in the Supreme Court of a renewed petition for certiorari to review the Court of Appeals' jurisdictional holding in *Boumediene v. Bush* , 476 F.3d 981 (D.C. Cir. 2007) ("*Boumediene I*") or the Supreme Court's resolution on the merits of the same jurisdictional issue as presented in a pending original habeas petition in *In re Ali*, No. 06-1194.

Dated: ______________

______________________________
Rosemary M. Collyer
United States District Judge

CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2007, I filed and served the foregoing Opposition to Motion to Dismiss by causing two copies to be delivered to the Privilege Review Team via UPS.

I further certify that upon receiving clearance from the Privilege Review Team, the Opposition will be filed electronically pursuant to Electronic Case Filing.

/s/ Martha Rayner
Martha Rayner