**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MOHAMMED ABDUL RAHMAN AL-SHIMRANI, | ) ) ) ) |
| Petitioner, | ) ) |
| | ) Civil Action No: 05-2249 (RMC) ) |
| v. | ) ) |
| GEORGE WALKER BUSH, *et al.*, | ) ) |
| Respondents. | ) ) |

**REPLY TO RESPONDENTS' OPPOSITION TO MOTION FOR
RECONSIDERATION OF ORDER DISMISSING PETITION FOR
HABEAS CORPUS AND DENYING MOTION TO STAY
PROCEEDINGS AND HOLD IN ABEYANCE**

Mr. Al-Shimrani's petition to this Court, requesting a determination of the legal
and factual justification for his indefinite imprisonment pursuant to the writ of habeas
corpus, has been pending for nearly two years. A stay has been in place for the vast
majority of this time, due to the highly contested issue of the subject matter jurisdiction
of this Court. The jurisdiction of this Court over Guantánamo habeas corpus petitions

has been addressed over the course of more than five years, by numerous courts through numerous court decisions, and by Congress through two separate pieces of legislation. Nonetheless, the issue of whether imprisoned men at Guantánamo may invoke the great writ of habeas corpus and challenge the legal and factual basis for their detention still remains very much up in the air.   Though at each step in the long history of the Guantánamo litigation there have been expectations of finality on the issue of subject matter jurisdiction, the issue simply has not been brought to a close as of yet.[1]  Petitioner requests that this Court recognize the unique and extraordinary nature of the Guantánamo litigation as a whole and stay Mr. Al-Shimrani's habeas petition pending a decision by the Supreme Court in *Boumediene/Al-Odah*.[2]   In essence, the dismissal of Mr. Al-Shimrani's habeas petition was premature in light of the Supreme Court's rare reversal of its own decision.

Mr. Al-Shimrani invokes Fed. R. Civ. P. 60(b)(6), seeking relief from the operation of a judgment that, if upheld, would be unjust and inequitable under the circumstances.   Respondents repeatedly maintain that the D.C. Circuit's ruling in *Boumediene v. Bush*, 476. F.3d 981 (D.C. Cir. 2007), *cert. granted*, U.S.L.W. 3707 (U.S.

---

[1] It appears that even Respondents awaited a final word from the Supreme Court before filing their April 19, 2007 motion to dismiss.   Since moving to dismiss the *Boumediene/AlOdah* group of cases in the Fall of 2004, in the wake of *Rasul*, Respondents have not moved to dismiss any habeas petitions that were filed pre-DTA.   Even in the wake of the DTA, which purportedly withdrew subject matter jurisdiction, respondents did not move to dismiss.   Respondents did not even move to dismiss upon passage of the MCA on October 17, 2006, which attempted to remedy any ambiguity in the DTA's provisions stripping this Court of habeas jurisdiction.   Similarly, after the Court of Appeals decision in *Bourmediene*, on February 20, 2007, Respondents did not seek dismissal, instead, waiting until the Supreme Court rendered a decision on certiorari, which was issued on April 2, 2007 before filing a motion to dismiss, on April 19, 2007, in what appears to be all Guantánamo habeas cases pending in the D.C. District Court at the time.
[2] Notably, the Supreme Court has maintained an original habeas petition on its docket, *In Re Ali*, 06-1194 (Feb. 13, 2007), and requested a response from the Government, *id.* (response requested by the Court on Mar. 16, 2007), even in the wake of its initial decision to deny certiorari in *Boumediene*.   In *In Re Ali*, the Government moved to dismiss the case, *id.* (motion filed on May 16, 2007), and the Petitioner has been granted leave to file an opposition to Respondents' motion to dismiss. *Id.* (motion granted on June 25, 2007). The petition is currently distributed for conference. *Id.*

June 29, 2077) is currently good law in this circuit. *See* Respondents' Opposition to Motion for Reconsideration, at 1-4 ("Res. Op."). Petitioner, however, did not dispute this in his motion, and does not in this Reply. Petitioner moves pursuant to Fed. R. Civ. P. 60(b)(6), permitting the Court to consider "other reason[s] justifying relief from the operation of the judgment," not 60(b)(5), allowing relief only where the judgment has been satisfied or the law that formed the basis for the prior decision has changed.

## ARGUMENT

### 1. Mr. Al-Shimrani's Petition For Habeas Corpus Was Dismissed Prematurely, And He Is Therefore Entitled To Relief Under Fed. R. Civ. Proc. 60(b)(6).

Respondents attempt to distinguish the cases that Petitioner relies on by suggesting that the courts in those cases considered the petitioners' incarceration "as one fact among many." Res. Op. at 3. Meanwhile, the additional facts here are more extreme than in the cited cases. Petitioner has already been incarcerated for nearly 6 years. Additionally, his imprisonment followed procedures that were facially inadequate, and even the minimal safeguards that the procedures afforded Petitioner were circumvented. *See* Exhibit B, Reply to Opposition to Petition for Rehearing, *Al Odah v. United States*, 06-CV-1196 (June 22, 2007), Appendix 8-15 ("Abraham Declaration") (describing the numerous deficiencies of the Combatant Status Review Tribunal system in place, and the numerous breaches of the established procedures); *see generally* Declaration of Rear Admiral (Retired) James M. McGarrah, *Bismullah v. Gates*, No. 06-CV-1197, *Parhat v. Gates*, No. 06-CV-1397, (D.C. Cir. May 31, 2007) ("McGarrah Declaration").

The court in *Ackerman* inquired as to whether the petitioner "was free, well, and able to defend himself, and in that regard had able counsel representing him in a trial in open court." *Ackermann v. United States*, 340 U.S. 193, 201 (1950). Petitioner here has

been imprisoned for nearly six years, and has not had access to any process in open court. In fact, the legal procedures that purportedly established the basis for Petitioner's incarceration – the Combatant Status Review Tribunal ("CSRT") – specifically provided that he was not entitled to counsel. Gordon England, Secretary of Navy, *Memorandum re Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantánamo Bay Naval Base* (July 29, 2004), Enclosure l(F)(5), (C)(3).

The *Klapprott* decision, contrary to Respondents' assertion, was based on more than just the fact that the defendant did not have the means to afford counsel. The Court was skeptical of government action in absence of "evidence [or] a hearing . . . at a time when the Government was then holding the citizen in jail with no reasonable opportunity for him effectively to defend [himself]." *Klapprott v. United States*, 335 U.S. 601 (1949). The court was especially concerned with the lack of evidence that the Government was able to proffer in support of its allegations. *Id.* Here, Petitioner has similarly been subject to incarceration without having an opportunity to collect, or even see, the evidence against him.[3] The Abraham Declaration most notably established that the Government failed to allow consideration of potentially exculpatory evidence. The concern of the court in *Klapprott* was the lack of evidence justifying detention, which directly parallels the situation of Petitioner here.

Mr. Al-Shimrani has been deprived of a fair hearing and the opportunity to submit favorable evidence on his behalf. It is the same lack of procedural fairness in providing a legal basis for Petitioner's imprisonment that is likely to have initiated the Supreme

---

[3] Though Respondents made portions of the CSRT available to Petitioner's counsel pursuant to this Court's Order to Show Cause, *Al-Shimrani v. Bush*, 05-CV-2249 (Nov. 17, 2005) (order issued Dec. 23, 2005), counsel is not permitted to share the classified information with her client pursuant to the protective order. *See In re Guantanamo Detainee Cases*, 344 F. Supp. 2d. 174, 180 (D.D.C. Nov. 8, 2004).

Court's rare reconsideration of its denial of certiorari.   Exercising this procedural mechanism,[4] one that has not been utilized in 60 years,[5] indicates just how extraordinary the Supreme Court found the questions of legal fairness surrounding the Guantánamo detainees.   The cases that Petitioner relies on were influenced by two compelling factors: incarceration and lack of fairness in the legal review process.   These two facts are acutely relevant in the case of Petitioner here, and constitute "extraordinary" facts justifying this Court's reconsideration of its dismissal.[6]

2.  **This Court Has The Authority to Reconsider Its Dismissal Of Mr. Al-Shimrani's Petition For Habeas Corpus, And Stay The Proceedings – As Have The Majority Of District Courts That Are Confronting Guantánamo Habeas Petitions**

Respondents assert that the *Al Ginco* case is inapplicable here. Res. Op. at 4.  In their Opposition, Respondents try to distinguish *Al Ginco* based on the fact that there was an additional issue (transfer of the detainee) involved in that case.   However, that fact was not dispositive. *Al Ginco v. Bush,* D.C. Cir. No. 06-CV-5191, at 2.  The circuit court panel there simply acknowledged that district courts have the authority to consider "petitioner[s'] motions to stay and hold in abeyance, which are currently pending in the district court in the actions underlying these consolidated appeals." *Al Ginco,* D.C. Cir. No. 06-CV-5191, at 2.  Upon considering the Government's motion to dismiss, the panel

---

[4] The Court, pursuant to Supreme Court Rule 44.2, granted the *Boumediene* petitioners' petition for rehearing, vacated its April 2, 2007 order denying certiorari, and granted the writ of certiorari.

[5] Robyn Blummer, SALT LAKE TRIBUNE, *Heroism comes in many forms,* July 7, 2007.

[6] It is also important to note that Petitioner invokes subsection 6, not to skirt the one-year limitation that is imposed on the filing of a motion to reconsider under certain sections of Rule 60(b) (*See* Fed. R. Civ. Proc. 60(b)(1)-(3)). The justification for courts to require "extraordinary circumstances" . . . [is] to prevent clause (6) from being used to circumvent the 1-year limitation period that applies to clause 1[-3]"). *Id.* Here, however, there is no doubt that Mr. Al-Shimrani timely filed his habeas petition under 60(b)(6). Rather, Petitioner invokes subsection 6 because the unique and extraordinary context of this litigation does not fall within any other subsection of 60(b). The premature dismissal of his habeas petition cries out for reconsideration. Such a situation, where subsections 1-5 cannot operate to provide relief, is precisely where 60(b)(6) is to be invoked. *Klapprott v. United States,* 335 U.S. 601, 613 (1949).

instructed that courts "may" use their discretion to grant petitioners' motions and choose to stay proceedings. *Id.*

Respondents' characterization of the Court's order in *Al Ginco* as being unique is misleading. Petitioner's request that this Court use its discretion to stay the proceedings is not at all a novel one. The vast majority of Guantánamo habeas cases pending in the district courts have not been dismissed. Respondents' April 19, 2007 motions to dismiss apparently filed in all habeas petitions have generally been denied, and instead the cases have been held in abeyance via administrative closure, *see e.g., Zadran et al.* v. *Bush et al.*, 05-CV-2367 (June, 29 2007) (D.C. Cir. 2007) (J. Roberts), or ignored, thus maintaining already existing stays or administrative closures. *See, e.g., Mohammon, et al.* v. *Bush*, 04-CV-01164 (Jan. 31, 2007) (D.C. Cir. 2007) (J. Walton). In acknowledgement of the interests at stake and the now certainty that the Supreme Court will decide on subject matter jurisdiction, district courts have overwhelmingly refused to dismiss Guantánamo habeas cases, and have instead relied on the sensible, efficient and permissible use of stays.

This court should reconsider its dismissal of Petitioner's motion to stay and abey his petition for habeas corpus. Petitioner's motion concerns issues of the utmost importance – the right to be free from unjust incarceration. The law surrounding district court jurisdiction has been in flux for several years, and is dispositive on a large number of cases regarding detainees' access to justice in U.S. courts. A decisive ruling on the issue is expected in the near future, as the Supreme Court has granted certiorari in the *Boumediene/Al Odah* consolidated cases. This upcoming decision will provide the long-anticipated guidance as to whether district courts may appropriately provide detainees

relief through the writ of habeas corpus. Staying Petitioner's proceedings puts no burden on this Court's resources, and will allow the case to be immediately considered in the wake of the Supreme Court's ruling. Reconsideration of the order dismissing Mr. Al-Shimrani's petition is proper here.

**3. Contrary To Respondents' Contention, Mr. Al-Shimrani's Filings In The Court Of Appeals Do Not Prevent This Court From Reconsidering Its Dismissal Of His Habeas Petition**

Respondents contend that the DTA review process in the Court of Appeals can afford Petitioner the relief sought. That Mr. Al-Shimrani has been relegated to filing a petition pursuant to the DTA should not be interpreted by this Court as any waiver or concession of Petitioner's strong objections to the hollow procedure and relief provided by the statute. The DTA does not even purport to provide detainees with the procedure provided by the great writ of habeas corpus – instead it provides that they are only entitled to an administrative review procedure. Brief for Respondent, *Bismullah v. Gates; Parhat v. Gates*, 2007 U.S. App. LEXIS 17255 (D.C. Cir. July 20, 2007). In addition, the Government has repeatedly contended that the DTA process does not provide a remedy. Transcript of Oral Argument at 3-9, 18, 54-55, *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007). After persistently denying that the Court of Appeals is entitled to order release, the Government cannot now assert that the DTA review process is analogous to habeas corpus.

The writ of habeas corpus is an instrument for safeguarding individual freedom against arbitrary and lawless state action, *Harris v. Nelson*, 394 U.S. 286, 291-92 (1969), by "secur[ing] release" for unjust incarcerations. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus is designed to "provide a prompt and efficacious remedy for

whatever society deems to be intolerable restraints" on liberty. *Hensley v. Municipal Court, San Jose-Milpitas Judicial Dist.*, 411 U.S. 345, 350 (1973). Indeed, "[i]mmediate release . . . lies at 'the core of habeas corpus.'" *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005); *Hoeun Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000); *Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir. 1990). The remedy of release is a fundamental component of habeas corpus, and because the Government concedes that the DTA process cannot provide one, its contention that the DTA offers Petitioner an alternative legal option is without merit.

Respondents also contend that Petitioner's filing in the Court of Appeals divests this Court of jurisdiction. Res. Op. at 4. However, a Rule 60(b) motion for relief from judgment is not among the post-trial motions that operate to preclude appellate review during their pendency. *Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir., June 11, 1991); *see* Fed. R. App. Proc. 4(a)(4). When both a Rule 60(b) motion and an appeal are pending simultaneously, appellate review may continue uninterrupted. At the same time, a district court may consider the 60(b) motion and, if the district court indicates that it will grant relief, the appellant may move in the appellate court for a remand in order that relief may be granted. *Hoai*, 935 F.2d at 312. *See also, Greater Boston Television Corp. v. FCC*, 463 F.2d 268, 280 (D.C. Cir., Dec. 29, 1971) (stating that a Rule 60(b) motion to provide relief may be considered by the district court while an appeal is pending). Petitioner's filing in the Court of Appeals has no bearing on whether this Court should reconsider its previous dismissal of his motion to stay and abey proceedings. A stay is the most appropriate and efficient course of action while awaiting the Supreme Court's decision in *Boumediene/Al Odah*.

## CONCLUSION

This Court should ignore Respondents' effort to characterize Petitioner's request for relief as one under Fed. R. Civ. Proc. 60(b)(5). Petitioner acknowledges that *Boumediene* is the law of the Circuit -- this is not dispositive on the issue here. This legal precedent has not prohibited the vast majority of district court judges from denying Respondents' motions to dismiss or ignoring the motion and maintaining previously entered stay orders. Instead of dismissing the large number of Guantánamo habeas cases, and potentially requiring all of these cases to be reinitiated after the Supreme Court's ruling in the upcoming term, most courts have decided not to dismiss habeas petitions filed on behalf of detainees at Guantánamo Bay.

Petitioner requests that this Court reconsider its May 9, 2007 Order dismissing Mr. Al-Shimrani's petition for habeas corpus and denying his motion to stay and hold the matter in abeyance. The factual and historical context of Petitioner's imprisonment is extraordinary, as the Supreme Court has recognized by recently reconsidering its denial of certiorari.

Respectfully submitted,
Counsel for Petitioner

Martha Rayner (NY-MR-1423)
LINCOLN SQUARE LEGAL SERVICES
Fordham University School of Law
33 W. 60th Street, 3rd Floor
New York, NY 10023
Tel: (212) 636-6934
Fax: (212) 636-6923