# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMMED ABDUL RAHMAN AL-SHIMRANI, <br><br> Petitioner, <br><br> v. <br><br> GEORGE WALKER BUSH, *et al.*, <br><br> Respondents. | Civil Action No: 05-2249 (RMC) |
| SANAD ALI YISLAM AL-KAZIMI (SANAD ALI ALKALIEMI), <br><br> Petitioner, <br><br> v. <br><br> GEORGE WALKER BUSH, *et al.*, <br><br> Respondents. | Civil Action No: 05-2386 (RBW) |

## DECLARATION OF MARTHA RAYNER, ESQ.

I, Martha Rayner, hereby declare under the penalties of perjury, pursuant to 28 U.S.C. § 1746 that:

1. I am an Associate Clinical Professor of Law at Fordham University School of Law and an attorney associated with Lincoln Square Legal Services, Inc., Fordham University

1

School of Law's clinical law office. I represent Petitioner, Mr. Mohammed Abdul Al-Shimrani, Internment Serial Number ("ISN") 195, and Petitioner, Mr. Sanad Ali Yislam Al-Kazimi, ISN 1453. I am familiar with all the facts and proceedings in the above captioned Guantánamo habeas matters.

2. I make this declaration in support of each Petitioner's Motion to Compel Respondents' Lawyer, The Department of Justice, To Comply with This Court's Protective Order and End Its Practice of Barring members of Petitioner's Counsel From Applying for Security Clearance.

3. This declaration is made on personal knowledge and information made available to me in the performance of my professional duties as counsel to the above-named Petitioners.

4. Mr. Al-Shimrani has been represented by Lincoln Square Legal Services since October of 2005. Mr. Al-Kazimi has been represented by Lincoln Square Legal Services since April of 2006.

5. Petitioner, Mr. Al-Shimrani, a high school teacher and university graduate who last resided in Najran, Saudi Arabia, has been detained at Guantánamo Bay Naval Base ("Guantánamo") since January 2002, after first being detained in Pakistan by the Pakistani military in December 2001 and then transferred to Kandahar, Afghanistan. One of the first prisoners to arrive at Guantánamo, Mr. Al-Shimrani is now one of approximately 270 who remain of the over 770 men who have been detained there since 2001. Respondents have not brought war crimes charges or criminal charges against petitioner Al-Shimrani, and there is no indication respondents plan to do so.

6. Petitioner, Mr. Al-Kazimi, is a citizen of Yemen who, on information and belief, was rendered from imprisonment in the United Arab Emirates ("UAE") to imprisonment in Afghanistan by the United States and then detained by respondent at Guantánamo. He is

2

a husband and father of four and has been in United States custody or constructive custody for over five years. Mr. Al-Kazimi was captured in the UAE in January of 2003. Mr. Al-Kazimi was subjected to physical and psychological torture and then rendered into the direct custody of the United States, likely the CIA. The CIA transferred Mr. Al-Kazimi to Afghanistan where he was held in the "Prison of Darkness" and further tortured. Mr. Al-Kazimi was transferred to Guantánamo on or about September 20, 2004, where he remains today. Respondents have not brought war crimes charges or criminal charges against petitioner Al-Kazimi, and there is no indication respondents plan to do so.

7. Lincoln Square Legal Services ("LSLS") is a non-profit legal services organization that is staffed primarily by second- and third-year law students who attend Fordham University School of Law. LSLS is composed of numerous specialized divisions, similar to large law firms, which include Community Economic Development, Criminal Defense, Housing, Immigration and Securities Arbitration, among other specialties.

8. The International Justice Clinic ("IJC") is the specialized division of LSLS that represents clients imprisoned at Guantánamo Bay Naval Base in Guantánamo, Cuba.

9. IJC students work directly under my supervision to engage in all aspects of litigation for these two clients. Students' legal work includes conducting legal research; drafting legal pleadings, motions, and briefs; strategizing and making decisions in every aspect of a client's case; communicating with opposing counsel, the Department of Justice, on all issues related to the case; and conducting fact investigations.

10. Each semester, nine or ten law students participate in the International Justice Clinic, supervised by me and, on occasion, another professor on a part-time basis. Most students enroll in the IJC for one semester, but each semester there is typically one or two students

who participate for a full academic year and in the past, one student engaged in Guantanamo related work for two years.

11. Since clinic students outnumber supervisors, students perform the vast majority of legal work required necessary to the IJC's clients.

12. Students collectively provide thousands of pro bono hours each year in their representation of the IJC's clients.

13. All members of each petitioner's counsel, including law students, have read the Protective Order entered in the above captioned cases and signed a Memorandum of Understanding. Students then handle protected information.

14. On November 14, 2005, soon after filing Mr. Al-Shimrani's Petition for a Writ of Habeas Corpus, a member of petitioner's counsel, law student Nicholas Mitchell, contacted Andrew Warden, a Department of Justice ("DoJ") attorney who represents Petitioners' adversary, the Department of Defense *et al*, in this litigation, to begin the security clearance process to enable petitioner's counsel to access classified information related to Mr. Al-Shimrani's case. Mr. Mitchell e-mailed Mr. Warden, requesting security clearance applications for four Lincoln Square Legal Services lawyers, three law students, and one administrative assistant. Mr. Mitchell specifically requested security clearance applications for the three law students because IJC anticipated that those members of "petitioner's counsel" (as defined by the protective order that governs the handling of classified information for this litigation) would require access to classified information to effectively represent Mr. Al-Shimrani in his habeas litigation. Mr. Mitchell cited the definition of "petitioner's counsel" that is used in the Habeas Protective Order that applies to the above captioned cases. See E-mail exchange between Andrew I. Warden, Attorney, DoJ, and Nicholas E. Mitchell, Lincoln Square Legal

4

Services, (Nov. 14–17, 2005), Exhibit B to Petitioner's Memorandum in Support of Motion to Compel Respondents' Lawyer, The Department of Justice, To Comply with This Court's Protective Order and End its Practice of Barring Members of Petitioner's Counsel from Applying for Security Clearance [hereinafter Petitioner's Memorandum in Support].

15. On November 17, 2005, respondents' attorney, Mr. Warden, replied by e-mail that the DoJ would provide security clearance applications for four attorneys and one administrative assistant, but "[w]e cannot agree to authorize the three legal interns to have access to classified information or to the secure facility in the GTMO habeas litigation. Given the issues and information involved in these cases, we are not in a position to routinely permit such access by law students, legal interns, summer associates, and the like. The three legal interns, of course, may participate in non-classified aspects of the cases as appropriate." *See Id.*

16. As a matter of practice, the Court Security Officer ("CSO") will not process an application without Andrew Warden's authorization. Thus, without DoJ attorney Andrew Warden's "authorization" the three law student members of petitioner's counsel could not apply for clearance. DoJ maintains this practice to the present day—no law student member of petitioners' counsel has been permitted to apply for security clearance.

17. I and my colleague, Professor James Cohen, applied for security clearance. The other two clinical professors who were initially put forward opted to bow out of participating in this litigation. Based on the administrative assistant's qualifications, her job description and her role within the International Justice Clinic, I subsequently determined that she would not be handling classified material and thus I did not submit her application for

5

processing. James Cohen and I were granted security clearance. Several months later, another attorney, Ramzi Kassem, joined the clinic; he was also authorized by Andrew Warden to apply for clearance and was ultimately granted security clearance. He has since left Fordham Law School, but continues to utilize his security clearance in his capacity as a fellow in Yale Law School's Allard K. Lowenstein International Human Rights Clinic, which also represents clients imprisoned at Guantánamo. Thus, in almost three years, petitioners' counsel in the above captioned matters has submitted only three security clearance applications. Currently, only two members of petitioners' counsel, myself and James Cohen, are security cleared.

18. On February 13, 2008, a law student member of petitioners' counsel, Elizabeth Hume, inquired of DoJ attorney, Lewis Yelin, who represents respondent in Mr. Al-Kazimi's DTA matter (Al-Kazimi v. Gates, 07-1526), whether DoJ would accept law student clearance applications in the context of DTA cases. DoJ attorney Lewis Yelin responded that "[a]s a matter of policy, the government does not provide security clearances for law students in cases involving detainees in Guantánamo" and referred Ms. Hume back to Andrew Warden if further discussion was necessary. *See* E-mail from Lewis Yelin, Attorney, DoJ, to Elizabeth Hume, et al., Lincoln Square Legal Services (February 13, 2008), Exhibit C to Petitioner's Memorandum in Support.

19. On April 30, 2008, Fordham's International Justice Clinic sent a joint letter, with Yale Law School's Allard K. Lowenstein International Human Rights Clinic, to respondents' habeas lawyer, requesting that respondents' lawyer reconsider its practice of barring law students from applying for security clearance. *See* Letter from Fordham's International Justice Clinic and Yale's Allard K. Lowenstein International Human Rights Clinic to Andrew Warden, Attorney, DoJ (Apr. 30, 2008), Exhibit D to Petitioner's Memorandum

6

    in Support.  Respondents' lawyer declined to change their practice at this time.  *See* E-mail from Andrew I. Warden, Attorney, DoJ, to Ramzi Kassem, Clinical Teaching Fellow, Yale Law School (May 16, 2008), Exhibit E to Petitioner's Memorandum in Support.

20. I have been involved in Guantánamo-related litigation for almost three years, and to my knowledge, translators, investigators, paralegals, and other non-attorney personnel who are members of legal teams representing other Guantánamo habeas petitioners have been permitted to apply and have received security clearance.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       June 6, 2008

                                                                       /s/
                                                    Martha Rayner